743 So.2d 228 (1999)
STATE of Louisiana in the Interest of J.M., et al.
No. 99-C-1271.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1999.
Harry F. Connick, District Attorney, Marilyn James, Michael E. Hill, Assistant District Attorneys, New Orleans, Louisiana, Counsel for the State.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, and Judge PATRICIA RIVET MURRAY.
BYRNES, Judge.
In this case involving three defendants, we granted the State's writ application to review the trial court's ruling which granted the defendant, B.C.'s motion to suppress the confession. We reverse and remand.
*229 According to the State's brief, on December 6, 1998, the victim, Michael Boulas, was robbed by two unknown males who drove up alongside the victim's automobile after the victim stopped his vehicle. When the robbers exited their car, one robber pointed a gun at the victim, and told the victim to give up his car, his ring and wallet. Boulas complied and the two men got into the victim's car and both cars drove off. Later, the police learned that J.M. was involved in a robbery on December 6, 1998. When the detectives met with J.M., he made a statement that led to the arrest of E.W. and B.C.
On December 8, 1998, B.C. and his stepfather, Mr. Jones, went to the police station after finding out that B.C.'s arrest was pending. Detective Adams verbally advised B.C. of his rights in the presence of his stepfather. According to Detective Adams, B.C. acknowledged that he understood his rights and would willingly respond to questions. The officer told B.C. his Miranda rights but B.C. did not sign a written waiver of rights form. B.C.'s statement was oral and not written.
The three defendants, J.M., B.C., and E.W., are charged with armed robbery in violation of La. R.S. 14:64. Probable cause was found for the arrest of the three defendants, and the defendant B.C. filed a motion to suppress his confession. After a hearing the juvenile court granted B.C.'s motion to suppress, and the State's writ application followed.
At issue is whether B.C.'s confession was voluntarily given pursuant to State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485. The State argues that under the totality of circumstances, the testimony of the police officers alone can be sufficient to prove that the juvenile's statements were freely and voluntarily given, and that a written waiver of rights form signed by the juvenile is not required.
La. R.S. 15:451 provides:
Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
In Fernandez the Louisiana Supreme Court overruled State in the Interest of Dino, 359 So.2d 586 (La.1978), certiorari denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), which previously mandated that the State must affirmatively show that the juvenile engaged in a meaningful consultation with an attorney or informed parent, guardian, or other adult interested his welfare before he waived his right to counsel and privilege against self-incrimination in the presence of the interested adult. The Louisiana Supreme Court reinstated the totality of circumstances standard as the basis for determining the admissibility of juvenile confessions.
The Supreme Court declared that the immaturity of a juvenile is no longer required to be overcome only when the record establishes that the youth had access to the advice of an interested adult. The Supreme Court held that all of the attending facts and circumstances must be reviewed to determine whether a juvenile's confession was freely given. Among the factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult. The Supreme Court determined that "the special needs of juveniles are analogous ... to the special need of individuals with mental deficiencies which are simply factored into the totality of circumstances. We see no reason to treat impediments of youth any differently." Id., 712 So.2d at 489. The Supreme Court concluded that: "Under a totality of circumstances standard, the special needs of juveniles can be accommodated in a manner that affords protection not only to juveniles, but also to the interests of society and of justice." Id.
The waiver of the defendant's constitutional rights in making a confession or statement does not require a higher *230 level of mental capacity than his level of competency to enter a plea of guilty, to assist counsel at trial; to waive his right to an attorney; or to waive other constitutional rights. State v. Gibson, 93-0305 (La.App. 4 Cir. 10/13/94), 644 So.2d 1093. The State may rely on the presumption of sanity in meeting its burden of showing that the evidence it seeks to introduce, that purports to be a confession, was freely and voluntarily given; because of the presumption, the defendant has the burden of showing the mental defect which renders him unable to understand his rights and therefore incompetent to waive them. State v. Smith, 95-1171 (La.App. 3 Cir. 4/24/96), 677 So.2d 458. The State is not required to negate the defendant's mental abnormality, but must prove beyond a reasonable doubt that the confession or statement given was voluntary, and the defendant must prove the existence of the mental defect or disorder that prevented the confession or statement from being voluntarily made. Id.
In State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, the accused was a juvenile tried in criminal district court. The Louisiana Supreme Court did not address the issue of whether an interested adult was present when the juvenile waived his Miranda rights. The Court noted that it could not presume a waiver of constitutional rights by an accused from a silent record. The Court considered that Green expressly waived his Miranda rights orally and by signing the waiver of rights form. Another additional fact that the Supreme Court stated may be considered is the defendant's familiarity with the criminal justice system process which included his prior Boykinizations and Miranda warnings. Other factors included the background, experience, and conduct of the accused. Further, the Supreme Court found that consideration of any factors which shed light upon the defendant's mental processes are relevant and pertinent evidence. The Supreme Court noted Green's capacity to accurately recall specific details of the crime scene, as well as his attempt to manipulate the progress of the interrogation towards a result favorable to him, i.e., initially claiming that the gun belonged to a co-defendant rather than to him.
Limited capacity or low intelligence alone does not vitiate the ability to make a voluntary confession. State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, certiorari denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); Gibson, supra. In Green, supra, the Louisiana Supreme Court held that expert testimony was not controlling. The Supreme Court acknowledged that Green's expert witness, qualified in forensic psychology, gave uncontradicted testimony establishing the defendant's mental retardation and his brain dysfunction. Although the expert testified that Green could not understand the waiver of rights form, the Louisiana Supreme Court pointed out that the expert stated that Green was "educable." The expert was aware of Green's prior criminal activity and arrests and assumed that the Miranda rights were given to him before. The Louisiana Supreme Court looked at the totality of circumstances including the other factors, as well as the expert's testimony. The Supreme Court noted that the trial court evidently credited the testimony of the police officers, in particular their experienced opinion that Green knew what he was doing when he waived his rights and started to speak. The Supreme Court found that Green's confession was voluntarily made.
In State v. Glynn, 94 0332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464, the appellate court found that the confession to aggravated rape was not involuntary on the theory of irregularities on the waiver of rights form (on the ground that the blank lines appearing beside each individual Miranda right were not initialed and the confession to the detective was not witnessed by a third party), where the *231 defendant did not deny that he received his Miranda rights.
In the present case, whether or not the juvenile signed a waiver of Miranda rights form; orally waived his Miranda rights; or implicitly waived his Miranda rights are factors to be considered. The waiver need not be explicit but may be inferred from the actions and words of the accused. State v. Samuels, 94-1408 (La. App. 4 Cir. 6/7/95), 657 So.2d 562. In State v. Taylor, 30,310 (La.App. 2 Cir. 2/25/98), 709 So.2d 883, the evidence supported the finding that the defendant made an intelligent waiver of his Miranda rights where testimony was presented that the defendant did not expressly agree but nodded affirmatively when asked if he understood his rights and he continued to talk to the officer.
The testimony of the police officers alone can be sufficient to prove that the juvenile's statements were freely and voluntarily given. State v. Buffington, 97-2423 (La.App. 4 Cir. 2/17/99), 731 So.2d 340; State v. Gibson, 93-0305 (La.App. 4 Cir. 10/13/94), 644 So.2d 1093. In the present case the record is not silent. The juvenile court may consider all of the factors under the totality of circumstances standard, including the presence of an adult, the juvenile's father. B.C. went to the police station with his stepfather after they were aware of B.C.'s pending arrest. They were aware of the charge and had the opportunity to discuss the matter prior to reaching the station. The juvenile does not suggest that he was coerced or induced into making the statements. There is no claim that the juvenile or his stepfather were mentally impaired. The defense argues that because the defendant was a juvenile, the State is required to show that the juvenile signed the Miranda waiver of rights form. Fernandez does not make that requirement. Nor does Fernandez mandate that the State must show the set requirements of the age, education, or methods used in interrogation. Fernandez holds that the State must show that the juvenile's waiver of Miranda rights was voluntarily and intelligently made under the totality of circumstances.
In the present case, the juvenile court stated:
And I'm going to agree with the state on this matter that you [the prosecutor], in fact, did give a totality of circumstances, that they were in a police station where the Rights Forms were only a few feet away, where they [the police] easily could have gone and gotten it. And I'm going to rule in favor of the defense and suppress it.
The juvenile court had asked the prosecution if it was aware that: "There's a requirement for a Miranda form, especially with juveniles, isn't there? ... They have something that they said that they are waiving one or the other. You are aware that there is a requirement, I'm sure." [Emphasis added.]
The reviewing court should defer to the finding of the trial judge unless his finding is not adequately supported by reliable evidence. Green, supra. However, in the present case the juvenile court erred in finding that under the circumstances, the State was required to have the juvenile sign a written waiver of rights form. The signing of the rights form is only one factor to be considered. Pursuant to Fernandez, the factors to be considered are not exclusive but are to be reviewed under the totality of circumstances.
In the present case, the juvenile court stated that: "The trial court takes judicial notice of the fact that it knows this officer and he is a well respected officer of this Court and in his community." Officer Lionel Adams testified that he verbally read the Miranda rights to B.C. and his stepfather. Officer Adams stated that when the police obtained a formal written statement, they normally would have a defendant fill out a rights of arrestee form that the defendant would sign. However, normally the written rights of arrestee form was not used with verbal statements. *232 In this case, B.C.'s statement was verbal and not written. Officer Adams testified that B.C.'s statement was given freely and willingly. The officer stated that: "He told me he understood his rights, in the presence of his father." Officer Adams denied that the juvenile was drunk or intoxicated in anyway. Officer Adams was aware that the juvenile was 15 years old. The officer testified that the juvenile's stepfather, Mr. Jones, brought the juvenile into the police station voluntarily. The officer explained the Miranda rights to the juvenile and his stepfather, and the officer reiterated those rights in court. The officer agreed that he did not know if B.C. could read but the officer explained that B.C. was not asked to read anything. (The juvenile's ability to read is one factor to determine his comprehension and ability to waive his Miranda rights voluntarily. In State v. Smith, supra, the police said that the defendant did not appear to be mentally defective. The appellate court found that the defendant did not establish that he had a mental defect that prevented his confession from being freely given despite the fact that the defendant had difficulty reading.)
In the present case there was no evidence or allegations of police misconduct. There was no evidence that B.C. and/or his stepfather were mentally impaired. We rely on the presumption of B.C. and his stepfather's sanity. There was no indication that B.C. was emotionally upset. There was no evidence and the defense does not contest that the officer verbally gave the Miranda waiver of rights to B.C. and his stepfather before B.C. made his statement. We give credit to the testimony of the police officer, concluding that in particular, in his experienced opinion, B.C. knew what he was doing when he waived his rights and started to speak. The following factors are also considered: The juvenile's stepfather was present. The juvenile had time to speak to his stepfather on the way to the station. The police officer testified the juvenile was not coerced or induced into making the statement, and that the juvenile and stepfather appeared to understand B.C.'s waiver of rights. We note the absence of any evidence to the contrary except that the juvenile did not sign a waiver of rights form. Under the totality of circumstances, there was evidence showing that the juvenile's waiver of his Miranda rights and his statement were intelligently and voluntarily made. B.C.'s statement is admissible.
Accordingly, the judgment of the juvenile court is reversed, and the juvenile's motion to suppress the confession is denied. The case is remanded for further proceedings.
WRIT GRANTED; REVERSED & REMANDED.